## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATT GORCZYCA, GARY SCHETTINI, and LINDA HINTZ, individually and on behalf of all others similarly situated, <br><br>                 Plaintiffs, <br><br>     v. <br><br> WEBER-STEPHEN PRODUCTS LLC, <br><br>               Defendant. | Case No.  1:22-cv-04623 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Matt Gorczyca, Gary Schettini, and Linda Hintz ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Weber-Stephen Products LLC ("Defendant" or "Weber") for the manufacture, marketing, and sale of consumer products that include grills sold under the Weber brand name (the "Products").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## <u>NATURE OF ACTION</u>

1.     This is a class action against Defendant for the marketing, manufacture, and/or sale of consumer products (the "Products"), the warranties of which include statements that condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts (a "tying arrangement" or "unlawful repair restriction").  Tying arrangements that condition a consumer product's warranty on the use of a specific repair service in this manner violate state and federal law.  Had Plaintiffs – or reasonable class members – been aware that the repair restriction was unlawful, they would not have purchased the Products, or would have paid significantly less for it.

2.     Further, Defendant exacerbates these violations by stating on the outside of the Product's packaging that the Products include a limited warranty, but the tying arrangement is not reasonably revealed to the consumer until after the point of sale.

3.     The warranty for the Products that Plaintiffs purchased can be found at https://weber.mizecx.com/retrieve/s3/knowledge/WEBER_OG/48615/48615.pdf?AWSAccessK eyId=AKIAUA2JDF35TDNNDYWX&Expires=1661787607&Signature=1FR1cFjelr155DPKD m8Cont5isU%3D (attached as **Exhibit 1**).

4.     Plaintiffs bring their claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for: (i) violations of the Magnuson-Moss Warranty Act, (ii) unjust enrichment, (iii) fraud, (iv) fraudulent omission, (v) violations of New York Gen. Bus. Law § 349, (vi) declaratory judgment, (vii) violations of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A *et. seq*., and (viii) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*

## **PARTIES**

5.     Plaintiff Matt Gorczyca is, and at all times relevant to this action has been, a resident of Blasdell, New York and a citizen of New York.  In or about March 2021, Mr. Gorczyca purchased one Weber Spirit E-310 Grill from an Ace Hardware located at S5726 South Park Ave, Hamburg, NY 14075 for $542.66.  Mr. Gorczyca purchased the Product after reviewing the packaging, reasonably believing its warranty complied with state and federal law and believing that he would have the ability to repair the product if it malfunctioned and/or modify the product with functioning parts if he so desired.  However, the Product Mr. Gorczyca purchased did not comply with state and federal law because of the unlawful repair restriction attached to the

warranty, which prohibited him from repairing or modifying the Product. Mr. Gorczyca would not have purchased the Product, or would have paid significantly less for the Product, had he known that the Product did not comply with state and federal law. The unlawful repair restriction attached to his warranty was only made reasonably apparent to him after purchasing the product and opening the packaging at home.

6. Plaintiff Gary Schettini is, and at all times relevant to this action has been, a resident of Wakefield, Massachusetts and a citizen of Massachusetts. In or about February 2019, Mr. Schettini purchased one Weber Spirit E-310 Grill from Amazon for approximately $449. The Product was then shipped to Mr. Schettini's residence. Mr. Schettini purchased the Product, reasonably believing its warranty complied with state and federal law and believing that he would have the ability to repair the product if it malfunctioned and/or modify the product with functioning parts if he so desired. However, the Product Mr. Schettini purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty which prohibited him from repairing or modifying the Product. Mr. Schettini would not have purchased the Product, or would have paid significantly less for the Product, had he known that the Product did not comply with state and federal law. The unlawful repair restriction attached to his warranty was only made reasonably apparent to him after purchasing the product and opening the packaging at home. Mr. Schettini has a ten-year warranty on his Grill.

7. The Product that Mr. Schettini purchased began to malfunction shortly after he purchased it. Specifically, the flavor grates rusted out, the igniter stopped working, and the Product is no longer able to hold up the gas tank. Mr. Schettini contacted Weber to request a repair under the Product's warranty. Weber, however, only provided replacement parts that were insufficient to address the aforementioned issues. Mr. Schettini was thus left with a choice between two

equally bad alternatives – either attempt to repair the grill himself and void the warranty according to the terms of the Product's warranty, or continue to use the malfunctioning Product.

8.     Plaintiff Linda Hintz is, and at all times relevant to this action has been, a resident of Rolling Meadows, Illinois and a citizen of Illinois.  In or about May 2020, Ms. Hintz purchased one Weber Spirit Grill from an Abt Appliances and Electronics Store for approximately $500.  Ms. Hintz purchased the Product after reviewing the packaging, reasonably believing its warranty complied with state and federal law and believing that she would have the ability to repair the product if it malfunctioned and/or modify the product with functioning parts if she so desired. However, the Product Ms. Hintz purchased did not comply with state and federal law because of the unlawful repair restriction attached to the warranty which prohibited her from repairing or modifying the Product.  Ms. Hintz would not have purchased the Product, or would have paid significantly less for the Product, had she known that the Product did not comply with state and federal law.  The unlawful repair restriction attached to her warranty was only made reasonably apparent to her after purchasing the product and opening the packaging at home.

9.     The Product that Ms. Hintz purchased began to malfunction shortly after she purchased it.  Specifically, the flavorizer bars stopped working and began catching on fire when the grill was used approximately one month after the purchase of the Product.  Ms. Hintz contacted Weber via email to request replacement parts in July 2020.  Weber, however, declined to honor the warranty and simply stated that Weber would not replace the flavorizer bars unless they were "burned through or corroded."  Instead, based solely on a low resolution photograph, Weber informed Ms. Hintz that her "flavorizer bars look amazing! They just need some cleaning."  Ms. Hintz was thus left with a choice between two equally bad alternatives – either attempt to repair

her grill herself and void the warranty according to the terms of the Product's warranty, or continue to use the malfunctioning and dangerous Product.

10.     Defendant Weber-Stephen Products LLC is a Delaware corporation with its principal place of business at 1415 S Roselle Rd, Palatine, IL 60067.  Defendant markets and distributes the Products throughout the United States.  Defendant sells its products to consumers on websites and retail stores nationwide.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

12.     This Court has personal jurisdiction over Defendant because its principal place of business is located in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District.

## COMMON FACTUAL ALLEGATIONS

I.     **Defendant's Business Activities**

14.     Defendant distributes consumer products to retailers throughout the United States, who then sell the appliances to consumers.

15.     Defendant's products include grills sold under the "Weber" brand name.

16.     All the relevant Products include the same unlawful repair restriction in their warranties.

17.     Defendant has advertised, marketed, offered for sale, sold, and distributed products through authorized dealers to consumers.

18.     Defendant's Products include a "written warranty" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), in the form of a limited warranty ("Warranty Statement").

19.     The length of the limited warranty offered by Defendant is at least two years.

20.     Defendant's limited warranty includes the aforementioned unlawful repair restriction.

## II.     Defendant Conditions Warranty Coverage On Unlawful Repair Restrictions

21.     In numerous instances, Defendant, through its warranty statements on the Products, condition warranty coverage on the usage of "genuine WEBER parts" and/or usage of Defendant's repair services to perform maintenance and repair work, rather than allowing consumers to repair the product themselves or take it to a third-party repair service.

22.     Specifically, Defendant's warranty states: "The use and/or installation of parts on your WEBER product that are not genuine WEBER parts will void this Warranty, and any damages that result hereby are not covered by this Warranty.  Any conversion of a gas grill not authorized by WEBER and performed by a WEBER authorized service technician will void this Warranty."[1]

23.     Additionally, by choosing to offer a limited warranty rather than a full warranty, Defendant has chosen to not obligate itself to provide a truly free repair.  This is because "limited warranties are not subject to section 2304, and, thus, the substantive remedies provided for in that section, which include a full refund of the purchase price, are not available for a breach of a limited warranty."  *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1223 (D. Minn. 2020) (citing 15 U.S.C.A. § 2304).

---

[1] Ex. 1, pg 4.

24.     According to the Warranty, if Defendant chooses to offer warranty service, "WEBER may ask you to return parts for inspection, shipping charges to be pre-paid."[2]

25.     Thus, under the terms of the warranty, purchasers who elect to take advantage of Defendant's warranty must at the very least pay postage and mailing fees, which can be substantial considering the size, weight, and delicateness of a grill.  Such purchasers would additionally not be able to use the Product that they purchased for the duration of the transport and repair and would face a serious risk that their products would be broken or lost.

26.     Additionally, a prudent customer shipping an expensive Product would purchase insurance for his Product, which would only add to the expense.

27.     Under the terms of the warranty, purchasers are bound to only use authorized repair services.

28.     Under Defendant's warranty, Defendant in effect provides parts in a manner which impede or preclude the choice by the consumer to perform necessary labor to install such parts.

29.     By conditioning its warranty in this manner, Defendant has violated the tying prohibition in the Magnuson-Moss Warranty Act, which prohibits companies from conditioning their warranties on a consumer's use of any article or service (other than an article or service provided without charge under the terms of the warranty) identified by brand, trade, or corporate name.

30.     Defendant's practices also violate state laws, as well as Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.

---

[2] *Id.*

### III.    The Magnuson-Moss Warranty Act

31.    The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, is the federal law that regulates consumer warranties and the procedures used to resolve warranty disputes.  It also directs the FTC to prescribe rules enforcing certain requirements pertaining to the use and content of consumer warranties.

32.    Section 2302(c) of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2302(c), prohibits any warrantor from conditioning a warranty on the consumer's using, in connection with the warranted product, any article or service (other than an article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name.

33.    An FTC Rule interpreting this provision specifically addresses warranty language (nearly identical to Defendant's warranty):

> No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)).  For example, provisions such as, "This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts," and the like, are prohibited where the service or parts are not covered by the warranty.  These provisions violate the Act in two ways.  First, they violate the section 102(c), 15 U.S.C. 2302(c), ban against tying arrangements.  Second, such provisions are deceptive under section 110 of the Act, 15 U.S.C. 2310, because a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of "unauthorized" articles or service.

16 CFR § 700.10(c).

### IV.    Section 5 Of The Federal Trade Commission Act

34.    The FTC has found that a "manufacturer's use of a repair restriction could be challenged as an unfair practice under Section 5 of the FTC Act if the repair restriction causes

substantial injury (e.g., monetary harm or unwarranted health and safety risks) that is not outweighed by countervailing benefits to consumers or competition that the practice produces, and the injury could not have been reasonably avoided by consumers."[3]

35.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anticompetitive conduct.  *See*, *e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

36.     The FTC has noted that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic waste, and unnecessarily increase wait times for repairs.  In contrast, providing more choice in repairs can lead to lower costs, reduce e-waste by extending the useful lifespan of products, enable more timely repairs, and provide economic opportunities for entrepreneurs and local businesses."[4]

37.     The FTC has issued several warning letters to companies that appeared to be engaged in warranty tying in violation of the Magnuson-Moss Warranty Act and has brought at least one enforcement action.   *See e.g.*  https://www.polygon.com/2018/4/13/17231520/ftc-warning-video-game-console-makers.

38.     This includes letters to companies, like Defendant, that offer ostensibly free repairs under the warranty.

---

[3] https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 14.

[4] https://www.ftc.gov/system/files/documents/public_statements/1592330/p194400repairrestrictionspolicystatement.pdf, pg 1.

39.     Microsoft, for example, was sent a compliance warning letter from the FTC for including a provision in the Xbox One warranty that stated that "Microsoft is not responsible and this warranty does not apply if Your Xbox One or Accessory is: ... (f) repaired by anyone other than Microsoft."[5]  This is despite the warranty stating that "Microsoft will (at its option) repair or replace it, or refund the purchase price to You."[6]

40.     In response to this enforcement letter, Microsoft updated its warranty to remove the offending provision.[7]

41.     The FTC has concluded that "it is clear that repair restrictions … steered consumers into manufacturers' repair networks or to replace products before the end of their useful lives."[8]

42.     The FTC has also expressed concern that repair restrictions "may place a greater financial burden on communities of color and lower-income Americans."[9]

43.     While manufacturers explain that these repair restrictions often arise from their desire to protect intellectual property rights and prevent injuries and other negative consequences resulting from improper repairs, the FTC has found that such justifications "should be rejected if found to be a mere pretext for anticompetitive conduct."[10]

---

[5] https://www.onmsft.com/news/after-ftc-complaints-microsoft-updates-its-warranty-policy

[6] *Id.*

[7] https://www.ign.com/articles/2018/05/10/nintendo-and-sony-update-their-warranty-policies-following-ftc-warning (last accessed June 6, 2022).

[8] "Nixing the Fix: An FTC Report to Congress on Repair Restrictions", available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf, pg 6.

[9] *Id.* at 5.

[10] *Id.* at 10.

44.     Here there is no justification for Defendant's repair restrictions since the technology inside of Defendant's Products are well known and simple.

45.     Due to these factors, on July 21, 2021, the FTC unanimously voted to ramp up law enforcement against repair restrictions that prevent small businesses, workers, consumers, and even government entities from fixing their own products.[11]

**V.  FTC's June 2022 Action Against Defendant**

46.     In July 2022, the FTC took action against Defendant for allegations that are substantially identical to this complaint.[12] [13]

47.      According to the FTC's complaint, Defendant has been imposing illegal warranty terms that conveyed that the warranty is void if customers use or install third-party parts on their grill products.  The FTC alleges that these terms harm consumers and competition.

## CLASS REPRESENTATION ALLEGATIONS

48.     Plaintiffs seek to represent a class defined as all purchasers of Weber branded products in the United States with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Class").  Excluded from the Class are persons who made such purchases for purpose of resale.

49.     Plaintiff Gorczyca also seeks to represent a subclass of all Class Members who purchased Weber branded products in the State of New York with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "New York Subclass").

---

[11] https://www.ftc.gov/news-events/press-releases/2021/07/ftc-ramp-law-enforcement-against-illegal-repair-restrictions.

[12] https://www.ftc.gov/news-events/news/press-releases/2022/07/ftc-takes-action-against-weber-illegally-restricting-customers-right-repair

[13] https://www.ftc.gov/system/files/ftc_gov/pdf/6.27.22%20Weber%20admin%20complaint.pdf

50.     Plaintiff Schettini also seeks to represent a subclass of all Class Members who purchased Weber branded products in the Commonwealth of Massachusetts with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Massachusetts Subclass").

51.     Plaintiff Hintz also seeks to represent a subclass of all Class Members who purchased Weber branded products in the State of Illinois with warranty provisions that prohibit self-repair and/or the use of unauthorized parts (the "Illinois Subclass") (collectively with the Class, the New York Subclass, and the Massachusetts Subclass, the "Classes")

52.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

53.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes ("Class Members" and "Subclass Members," respectively) but believe it numbers in the hundreds of thousands.  Given the size of the Defendant's operation and the number of retail stores in the United States selling Defendant's Products, Plaintiffs believe that Class and Subclass Members are so numerous that joinder of all members is impracticable.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

(a)    Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(b)    whether Defendant's conduct was unfair and/or deceptive;

(c)     whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes;

(d)     whether Plaintiffs and the Classes sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages;

(e)     whether Defendant's conduct violates the Magnuson-Moss Warranty Act; and

(f)     whether Defendant's conduct violates section 5 of the Federal Trade Commission Act.

55.     Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, purchased, in a typical consumer setting, Defendant's Products, and Plaintiffs sustained damages on account of Defendant's wrongful conduct.

56.     Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Classes.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

58.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

might not. In addition, individual actions could be dispositive of the interests of the Classes even where certain Class or Subclass Members are not parties to such actions.

## COUNT I
### Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

59. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

60. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

61. The Products are consumer products as defined in 15 U.S.C. § 2301(1).

62. Plaintiffs and the Class and Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

63. Defendant is a supplier and warrantor as defined by the Warranty Act because they are suppliers or other persons who give or offer to give a written warranty or who are or may be obligated under an implied warranty. 15 U.S.C. § 2301(4) and (5).

64. No warrantor may condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty or unless the warrantor has obtained a waiver pursuant to section 102(c) of the Act, 15 U.S.C. 2302(c)). 16 CFR § 700.10(c).

65. In connection with the marketing and sale of the Products, Defendant has conditioned a warranty on the consumer's using, in connection with the warranted Products, with the use of only an authorized repair service and/or authorize replacement parts. 16 CFR § 700.10(c).

66. Specifically, Defendant's warranty states: "The use and/or installation of parts on your WEBER product that are not genuine WEBER parts will void this Warranty, and any damages that result hereby are not covered by this Warranty. Any conversion of a gas grill not authorized by WEBER and performed by a WEBER authorized service technician will void this Warranty."

67. Additionally, warrantors offering a limited warranty that provides only for replacement of defective parts and no portion of labor charges, are prohibited from conditioning that the consumer use only service (labor) identified by the warrantor to install the replacement parts. A warrantor or his designated representative may not provide parts under the warranty in a manner which impedes or precludes the choice by the consumer of the person or business to perform necessary labor to install such parts. 16 C.F.R. § 700.10(b).

68. Defendant also violates this provision by requiring that any installation of parts on Defendant's products be performed with the authorization of Defendant.

69. Defendant also violates the pre-sale availability rule of the MMWA by not making the terms of the Products' warranties reasonably available before purchase.

70. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and the Class and Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby economically damaging Plaintiffs and the Class and Subclass Members.

71. Plaintiffs and the Class and Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

## COUNT II
### Unjust Enrichment

72.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

73.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

74.     Plaintiffs and members of the Classes conferred benefits on Defendant by purchasing the Products.

75.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class and Subclass Members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that the repair restriction was unlawful and unenforceable.  These omissions caused injuries to Plaintiffs and Class and Subclass members because they would not have purchased the Products if the true facts were known or would have paid substantially less for the Products.

76.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Classes is unjust and inequitable, Defendant must pay restitution and/or non-restitutionary disgorgement to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

77.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

78.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

79.     As discussed above, Defendant provided Plaintiffs and members of the Classes with false or misleading material information about the Products.

80.     Specifically, Defendant indicated to Plaintiffs and members of the Classes that they would be unable to repair or use parts not authorized by Defendant on the products that they had just purchased.  Defendant added this provision knowingly in order to encourage Plaintiffs and members of the Classes to purchase new Products and/or replacement parts at inflated prices rather than repair older Products or purchase third-party parts.

81.     Defendant misrepresented these unlawful repair restrictions as binding and enforceable even though such restrictions were explicitly unlawful according to FTC regulations and thus unenforceable.

82.     These misrepresentations were made with knowledge of their falsehood.

83.     The misrepresentations made by Defendant, upon which Plaintiffs and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the product than they would have.

84.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Classes in the form of price premiums and are entitled to damages and other legal and equitable relief as a result.

## COUNT IV
## Fraudulent Omission

85.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

86.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

87. This claim is based on fraudulent omissions concerning the unlawfulness of the repair restrictions that are included in Defendant's warranties. As discussed above, Defendant failed to disclose that the Products' repair restrictions were unlawful and unenforceable.

88. The false and misleading omissions were made with knowledge of their falsehood. Defendant manufactures, markets, and sells consumer electronics nationwide and knows that the FTC has stated that repair restrictions of the type that appears on Defendant's warranty are unlawful. Nonetheless, Defendant continued to include its unlawful repair restrictions on its Products.

89. The false and misleading omissions were made by Defendant, upon which Plaintiffs and members of the proposed Classes reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and members of the Classes to purchase Products that they otherwise would not have or at least pay substantially more for the Products than they otherwise would have.

90. The fraudulent actions of Defendant caused damage to Plaintiffs and members of the proposed Classes, who are entitled to damages and punitive damages.

## COUNT V
**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

91. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

92. Plaintiff Gorczyca brings this claim individually and on behalf of members of the New York Subclass against Defendant.

93. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices concerning the unlawfulness of the repair restrictions that are included in Defendant's

warranties. As discussed above, Defendant failed to disclose that the Products' repair restrictions were unlawful and unenforceable.

94.     The foregoing deceptive acts and practices were directed at consumers.

95.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

96.     Defendant's conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

97.     Plaintiff Gorczyca and New York Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unlawful nature of the Products or would have paid substantially less for them.

98.     On behalf of himself and other members of the New York Subclass, Plaintiff Gorczyca seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## <u>COUNT VI</u>
## Declaratory Judgment

99.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

100.    Plaintiffs bring this claim individually and on behalf of members of the Classes against Defendant.

101.    As described above, under Federal law it is unlawful for Defendant to include a tying arrangement that voids the warranties of the Products if a user attempts to self-repair and/or modify the Products.

102.    Plaintiffs cannot repair or modify their own Products according to the Product's warranty as currently written.

103.    There is an actual controversy between the parties, requiring a declaratory judgment.

104.    This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a determination by the Court: (a) that this action may proceed and be maintained as a class action; (b) that Defendant's unlawful repair restrictions are void and unenforceable; (c) that an award of reasonable attorneys' fees and costs of suit to Plaintiffs and the Class is appropriate; and such other and further relief as is necessary and just may be appropriate as well.

## COUNT VII
### Violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, *et seq.*

105.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

106.    Plaintiff Schettini brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendant.

107.    Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("93A")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."

108.    It is "the intent of the legislature that in construing" whether an act is deceptive under 93A § 2, "the courts will be guided by the interpretations given by the Federal Trade

Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." *See* Mass. Gen. Laws Ann. ch. 93A, § 2.

109.     An act or practice is a violation of 93A if it "violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." 940 CMR 3.16.

110.     Section 9 provides: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

111.     Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale Products that directly or indirectly affect the people of Massachusetts.

112.     By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continue to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

113.     Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

114.     Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making

21

purchase decisions.

115.    Defendant has also committed a violation of 93A predicated on its violations of FTC regulations – specifically, its violation of Section 5 of the FTC Act as interpreted by the Federal Trade commission.

116.    Defendant has also committed a violation of 93A predicated on its violation of the Magnuson-Moss Warranty Act, which is a federal consumer protection statute within the purview of M.G.L. c. 93A, § 2.

117.    Plaintiff Schettini and members of the Massachusetts Subclass reasonably relied upon and were deceived by Defendant's warranty policies.

118.    Defendant knowingly mispresented that the Products' warranties complied with Federal and Massachusetts law.

119.    Had Plaintiff Schettini and Massachusetts Subclass members known that the Products' warranty included an unlawful repair restriction, they would either not have purchased the Products, or would have paid less for them.

120.    Plaintiff Schettini and the Massachusetts Subclass Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the deceptive nature of the Products or would have paid substantially less for them.

121.    Plaintiff Schettini and members of the Massachusetts Subclass have been harmed by this injury, adverse consequence, and/or loss.

122.    93A represents a fundamental public policy of the Commonwealth of Massachusetts.

123.    For each loss, Plaintiff Schettini and each member of the Massachusetts Subclass

may recover an award of actual damages or twenty-five dollars, whichever is greater. Ch. 93A §
9(3).

124.     Because Defendant acted willfully or knowingly, Plaintiff Schettini and each
member of the Massachusetts Subclass may recover up to three but not less than two times this
amount. In addition, Plaintiff Schettini may recover attorneys' fees and costs.

125.     Plaintiff Schettini and the members of the Massachusetts Subclass may also seek
the imposition of an injunction relief which limits and polices Defendant's representations within
or reaching Massachusetts. The balance of the equities favors the entry of permanent injunctive
relief against Defendant. Plaintiff Schettini, members of the Massachusetts Subclass, and the
general public will be irreparably harmed absent the entry of permanent injunctive relief against
Defendant. Plaintiff Schettini, members of the Massachusetts Subclass, and the general public
lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest.
Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a
permanent injunction.

## COUNT VIII
### Violations Of The Illinois Consumer Fraud And Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*

126.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth
above as though fully set forth herein.

127.     Plaintiff Hintz brings this claim individually and on behalf of the members of the
Illinois Subclass against Defendant.

128.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp.
Stat. 505/2, states that, "[u]nfair methods of competition and unfair or deceptive acts or practices

. . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

129.    By the conduct described in detail above and incorporated herein, Defendant engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

130.    Defendant's omissions regarding the unlawful repair restriction, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Products.

131.    Plaintiff Hintz and the other Class members justifiably acted or relied to their detriment upon Defendant's omissions of fact concerning the above-described illegality of Defendant's unlawful repair restriction.

132.    Had Defendant disclosed all material information regarding the illegal nature of Defendant's warranty to Plaintiff Hintz and the other Illinois Subclass members, Plaintiff Hintz and the other Illinois Subclass members would not have purchased the Products or would have paid less to do so.

133.    Defendant's omissions have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Illinois Subclass.

134.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the enforceability of the Product's repair restriction in a way intended to discourage legal repair of the Products.

135.    Defendant's conduct is also misleading in a material way because, as discussed above, it fails to comport with Section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1) which prohibits unfair or deceptive actors or practices, as recognized by the Federal Trade Commission.

136.    As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff Hintz and the other Illinois Subclass members have suffered ascertainable loss and actual damages. Plaintiff Hintz and the other Illinois Subclass members who purchased the Products would not have purchased the Products, or, alternatively, would have paid less for them had the truth about Defendant's unlawful repair restriction been known.  Plaintiff Hintz and the other Illinois Subclass members also suffered diminished value of their Products. Plaintiff Hintz and the other Illinois Subclass members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 815 Ill Comp. Stat. 505/1, et seq

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the nationwide Class, New York Subclass, the Massachusetts Subclass, and the Illinois Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Classes and Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs, the nationwide Class, the New York Subclass, the Massachusetts Subclass, and the Illinois Subclass on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     An award of statutory penalties to the extent available;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of monetary relief; and

(h)     For an order awarding Plaintiff, the Class, New York Subclass, the Massachusetts Subclass, and the Illinois Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so triable.

Dated: November 22, 2022           Respectfully submitted,

**MCMORROW LAW, P.C.**

By:    _/s/ Michael J. McMorrow_
           Michael J. McMorrow

Michael J. McMorrow
6348 N. Milwaukee Ave., #313
Chicago, IL 60654
Tel: (773) 616-6453
E-Mail: mike@mjmcmorrow.com

**BURSOR & FISHER, P.A.**
Julian C. Diamond (*pro hac vice* forthcoming)
888 Seventh Ave, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jdiamond@bursor.com

**BURSOR & FISHER, P.A.**
Neal Deckant
Joel D. Smith
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ndeckant@bursor.com
       jsmith@bursor.com

*Attorneys for Plaintiff*